## WANDELL *v.* CORBIN.

*(Supreme Court, General Term, Second Department.* June 25, 1888.)

RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.
In an action against a railroad company for personal injuries, the evidence tended to show that plaintiff, with the military company of which he was a member, was a passenger on an eastward bound special train of defendant; that the train stopped at a point where the sign, "Rockaway Junction," was displayed, and there remained 15 or 20 minutes, to permit a westward bound train to pass; that no caution was given, nor was any announcement made of the object of the stop; that the morning was hot and sultry, and plaintiff, becoming ill with thirst and the excessive heat, sought for water on the train, and, finding none, crossed an intervening track, to what appeared to be a passenger platform, and entered a switch-house connected therewith, through a door facing westward; that, as he crossed the track, he looked eastward, and saw no train coming, though he could see nearly two miles; that, while drinking, he heard a bell ring, and, taking it to be the signal for the starting of his train, rushed from the building, and, as he came to a point where he could see if a train was coming, was struck by the west-bound train. Defendant's engineer did not state positively that he did not ring the bell of plaintiff's train. There was evidence, which was disputed, that plaintiff's captain ordered that no one should leave the train. *Held,* that the question as to plaintiff's contributory negligence, and as to whether he had abandoned his relation as a passenger, should have been submitted to the jury.

Appeal from circuit court.

Action for personal injuries, brought by Englehart Wandell against Austin Corbin, as receiver of the Long Island Railroad Company. The facts, as stated by the general term on the former hearing, were as follows: "Plaintiff, as member of a regiment, boarded a special train at Long Island City, with his company, bound for Creedmoor. The train stopped at Rockaway Junction, and there remained 15 or 20 minutes, to permit a westward bound train to pass on its way to Long Island City. No caution was given, nor was there any announcement of the object for the stop. The morning was hot and sultry, and plaintiff became ill from thirst and the excessive heat of the day. He sought for water on the train, and found that none had been provided for the passengers. Looking out from his car, he could see a long platform, which appeared like a passenger platform. He asked one of his comrades to get him a drink of water, and an effort was made to that end, but the comrade returned from the platform, and a switch-house which was connected therewith, and told him that, while there was water in that house, there was no cup, and he would have to go to the place to quench his thirst. He thereupon left the waiting train, crossed an intervening track, and entered the switch-house by a door opening through a side of the building which ran at right angles to the track, and faced westward. The door was only eight or ten feet from the track. While in the house, and before he had time to drink, he heard the bell of his train begin to ring. It seems to be conceded that this was the signal for the waiting train to start on its way eastward. Plaintiff immediately left the water, and hurried westward through the door, turned to his left, and attempted to cross the track, and board his train. Of course, his back, at first, was eastward, so that he could not then see the approaching train, even if there had been an unobstructed view. When he turned on his way towards the track, his view, for a few feet, was obstructed by the building, and he could not then see the coming train. Indeed, he could have seen it only while passing over a space of four or five feet after he crossed the prolongation of the southerly line of the switch-house, and then he was hurrying, running, and there was but little opportunity to look or see, and scarcely time for reflection, even if he had thought of it. As he approached the track, he was struck by the locomotive of the westward bound train, which was running at the rate of 35 or 40 miles per hour." There was a judgment for defendant, and plaintiff appeals.

*John J. Leary,* (*Geo. W. Roderick,* of counsel,) for appellant. *Hinsdale & Sprague,* (*E. B. Hinsdale,* of counsel,) for respondent.

PRATT, J. We carefully examined this case on a former appeal, and, upon the facts then disclosed, held that it ought to have been submitted to the jury on the question of negligence of both plaintiff and defendant. 38 Hun, 391. The trial court, after hearing all the evidence, has again dismissed the complaint without submitting the case to the jury. It therefore follows that this judgment must be reversed, and a new trial ordered, unless some new fact has been presented which substantially changes the case, and obviates the difficulties which we then considered. It will be unnecessary to repeat the reasons which we gave in sustaining the exceptions on the former argument. Suffice it to say that, while the place at which defendant's eastward train stopped to permit the Patchogue express to pass westward may not have been a regular station, there was, nevertheless, a sign on the building appropriate to such a station, "Rockaway Junction;" and it may very well be that one unfamiliar with the locality might reasonably have mistaken the place for a passenger station. The fact remains that the plaintiff's train had stopped at this place, and waited for some 15 or 20 minutes on the south track. Plaintiff, sick from excessive heat, needing water to quench his thirst, left his waiting train, crossed the northerly track, and, as he crossed it, looked eastward, and saw no train coming westward, although he could see nearly two miles. He entered the building adjoining the track to get a drink of water; and while drinking, having taken a single swallow, heard a bell ring, which he took to be the signal for the starting of his train. An attempt was made to show that the sound was not from the bell on his train, but the engineer does not say positively that he did not ring his bell; and, if he did, his statement would present a question of credibility for the jury, in view of his relations to defendant. Hearing this bell, plaintiff rushed out of the building to board his train; and, just as he came to a point where he could look eastward to see if a train was coming, he was struck and injured by the west-bound locomotive. It certainly was a question of fact whether or not he was negligent in this emergency. We cannot say, as matter of law, that negligence can be attributed to him at this point. On the other hand, we cannot say that it was negligent for a man situated as plaintiff was to leave his train to get water at such a place. The jury were to judge of that. The fact also remains that the defendant gave no warning of the extreme danger of leaving a train at this point, which we pointed out at 38 Hun, 391. It seeks to shelter itself behind an order given to this company by its captain before it boarded the cars, that the men must not leave the train until it arrived at Creedmoor. But plaintiff testified that he heard no such order, and there was evidence tending to refute the statement that any such order was given. Several members of plaintiff's company, situated so that they would naturally have heard such an order if given, testified that they heard nothing of the kind. And, besides that, a jury might well have found from this evidence that plaintiff's sickness was such that his leaving the train for water was justified, so far as the order of the commandant was concerned. At all events, this order, even if given, seems to us a poor excuse for the defendant's omission to give any warning of the special dangers which we pointed out in our former opinion. We think that evidence will not justify us in holding, as matter of law, that plaintiff had abandoned his relation as a passenger to defendant. It is plain that that was not plaintiff's intention. The case, it is true, has been somewhat changed, but not in the essential particulars pointed out in our former decision. We think it ought to have been submitted to the jury under proper instructions. The judgment must be reversed, and a new trial ordered, with costs to the plaintiff, to abide the event of the action.